In the Circuit Court of Alexander County

02227-S 3374
TMP/MYL

Anthony Gay
　　　Plaintiff

10-MR-32

VS.

Marvin Powers
　　　Defendant

AMENDED CAUSE OF ACTION FOR CRUEL AND UNUSUAL PUNISHMENT (misuse of force), BATTERY AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Now comes plaintiff Anthony Gay filing this AMENDED CAUSE of Action for Cruel And Unusual punishment (misuse of force), battery And Intentional Infliction of Emotional distress and states As follows:

(1) I, Anthony Gay Am the plaintiff in this AMENDED CAUSE of Action And was At All times pertinent An Inmate in Tamms Correctional Center.

(2) The Defendant Marvin Powers is a medical doctor At Tamms Correctional Center And was At All times pertinent A medical doctor At Tamms Correctional Center.

COUNT I CRUEL AND UNUSUAL PUNISHMENT (misuse of force)

(3) On January 22, 2010 the plaintiff was suffering

from mental health problems and became angry and agitated and as a result, he inflicted a 4" long and approximately "2-1 inch deep laceration on his right upper thigh. He also weaved six strips of towel through his skin on his right inner thigh. At approximately 4:40 a.m. plaintiff was escorted to the nurse's station for medical treatment. The nurse examined plaintiff and realized plaintiff's laceration was to large for her to close. As a result, she notified defendant powers - via phone - at home. Defendant powers directed the nurse to inform security to return plaintiff to his cell and he would see plaintiff later. At approximately 9:30 a.m. the plaintiff was escorted back to the nurse's station. The defendant powers tried to maliciously and sadistically rip the strips of towel out of plaintiff's leg. When he realized it wouldn't work, he intentionally, maliciously and sadistically with the intent to cause harm cut plaintiff's skin instead of the strips of towel. This caused plaintiff to bleed and unnecessary pain. Subsequently, plaintiff informed defendant powers he did not want sutures if he wasn't going to use anesthetic. The defendant powers stated, "you don't tell me how to do my job." Then against plaintiff's will and consent the defendant powers sutured plaintiff without anesthetic causing plaintiff

unnecessary pain.

## COUNT II  BATTERY

(4) Plaintiff re-alleges paragraphs 1st thru 3rd

## COUNT III  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(5) Plaintiff re-alleges paragraphs 1st thru 3rd

## RELIEF REQUESTED

(6) That plaintiff be awarded compensatory and punitive damages.

Respectfully

/S/ _____

State of Illinois

### AFFIDAVIT

I, Anthony Gray, being duly sworn under oath state that I am the plaintiff in this cause of action and state the contents thereof are true and correct to the best of my knowledge.

/S/ _____

### CERTIFICATE OF SERVICE

This certifies I sent the above instrument to the clerk of the circuit court in Alexander County and a copy to the defendant via mail on 12-9-10

/S/ _____
Anthony Gray B52257
8500 Sophville road
Tamms I, 62988

# RECORD SHEET

Case No. 2010 MR 32

Gay, Anthony B62251

vs.

Powers, Marvin

Nature of Case _____

Attorneys:

Form AO 69-32 Byers Printing Company, Springfield, IL

| DATE | JUDGE AND REPORTER | | COSTS |
|------|--------------------|--|-------|
| 10 8 2010 | PJ | of Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss. Motion to Strike Defendant's Motion to Dismiss or in the Alternative Motion to Strike Defendant's Paragraph 11 thru 16, and Exhibit. Response to Plaintiff's Judicial Notice. Reply to Plaintiff's Response to Defendant's Motion to Dismiss. Copy to Plaintiff. Count I of Plaintiff's Complaint is dismissed pursuant to Section 512-615 for failure to state a cause of action. Plaintiff is given to 11/15/10 to file an amended complaint in connection with his emotional distress claim. Defendant is given until 1/15/11 to file any response thereto. Count II of Plaintiff's Complaint is dismissed | |

# RECORD SHEET

Case No. 2010 MR 32

Nature of Case _____

Gay, Anthony B62251
vs.

Powers, Marvin

Attorneys:

Form AO 69-32 Byers Printing Company, Springfield, IL

| DATE | JUDGE AND REPORTER | | COSTS |
|------|--------------------|--|-------|
| | | pg pursuant to 5/12-619 for failure to comply with 5/12-632. The Court reserves ruling on Defendant's request to have Plaintiff's pleadings deemed frivolous. | |
| | | Sent for my review on 1/19/11 & mail copies of this entry to the parties | |

COPY

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
ALEXANDER COUNTY, ILLINOIS

**FILED**

OCT 0 7 2010

CIRCUIT CLERK ALEXANDER COUNTY

ANTHONY GAY, )
)
Plaintiff, )
)
vs. )  Law No.:  2010 MR 32
)
MARVIN POWERS, )
)
Defendant. )

<u>**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**</u>

NOW COMES the Defendant, MARVIN POWERS, M.D., by HEYL, ROYSTER, VOELKER &

ALLEN, and for his Reply to Plaintiff's Response to Defendant's Motion to Dismiss states:

1.      The Plaintiff's response to the Motion to Dismiss contains an allegation that he

has not filed a medical malpractice claim.

2.      Plaintiff cannot avoid the requirements of 735 ILCS 5/2-622 by simply stating that

his claim is not one for medical malpractice.

3.      The Plaintiff's response further confirms that his complaint with Dr. Powers relates

to the manner in which Dr. Powers provided Plaintiff with sutures.   Plaintiff's response

referencing Count I-battery, specifically indicates that his claim against Dr. Powers is based upon

his claim that the battery occurred when Dr. Powers provided Plaintiff "sutures without

anesthetic against Plaintiff's will and consent".

4.      The Plaintiff does not allege sufficient facts to indicate that he did not seek

treatment from Dr. Powers, but only that he does not believe the manner in which the sutures

were provided was appropriate.

5.     Furthermore, the Plaintiff contends that Defendant tried to remove strips of towel that he had personally weaved through his own skin.  Although the Plaintiff appears to be alleging that he did not like the manner in which Dr. Powers was providing him treatment, nowhere in the allegations does Plaintiff sufficiently allege that Dr. Powers did not have Plaintiff's consent to treat the wounds that he had self-inflicted.  As referenced in the original motion, the Plaintiff must allege facts to show that the physician acted with a substantial variance from the consent that was given.  Here, the Plaintiff does not provide such allegations and fails to provide any evidence to suggest that the care and treatment provided by Dr. Powers was inappropriate or that it varied from the standard of care which would require a reviewing health physician's affidavit.

6.     As the claims for intentional infliction of emotional distress derive from the claims in Count I, such claims also must be dismissed.

MARVIN POWERS, M.D., Defendant

BY: _Theresa Powell_

HEYL, ROYSTER, VOELKER & ALLEN
Theresa M. Powell
ARDC #: 6230402

HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, PNC Bank Building
1 North Old State Capitol Plaza
P.O. Box 1687
Springfield, Illinois 62705-1687
Telephone  217.522.8822
Facsimile  217.523.3902

2

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument, Reply to Plaintiff's Response to Defendant's Motion to Dismiss, was served upon the attorneys of all parties to the above cause by enclosing the same in an envelope addressed to such attorneys at their business address as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Box in Springfield, Illinois, on the _____ day of September, 2010.

Mr. Anthony Gay, #B62251
Tamms Correctional Center
Inmate Mail/Parcels
8500 Supermax Road
Tamms, IL 62988

_____
Theresa M. Powell

TMP/cs (S3374)
15952899_1.DOCX

3

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
ALEXANDER COUNTY, ILLINOIS

**FILED**

OCT 07 2010

CIRCUIT CLERK ALEXANDER COUNTY

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Law No.: 2010 MR 32 |
| | ) | |
| MARVIN POWERS, | ) | |
| | ) | |
| Defendant. | ) | |

### RESPONSE TO PLAINTIFF'S JUDICIAL NOTICE

NOW COMES the Defendant, MARVIN POWERS, M.D., by HEYL, ROYSTER, VOELKER &

ALLEN, and for his response to Plaintiff's request that the Court take judicial notice states:

1.      Defendant would admit that there are certain circumstances where it would be

appropriate for the Court to take judicial notice of certain information.  However, information

contained in a newspaper article is not one of them.  The information contained in Plaintiff's

exhibit entitled "Appendix" is an article written by two apparent reporters referencing

information that is completely irrelevant to this lawsuit and information that may not be subject

to appropriate cross-examination.

2.      Newspaper articles are not entitled to judicial notice.  The same would be true

with respect to all of the articles attached to the Plaintiff's request that the Court take judicial

notice.

3.      Likewise, a letter from a Mr. Fathi to Governor Quinn regarding Tamms

Correctional Center is also not entitled to judicial notice.  Counsel could provide letters to the

contrary as well as newspaper blurbs referencing positive information stemming from the

Tamms Correctional Center. However, none of this information is relevant to the claims at issue.

Much of the information contained in the articles is simply untrue and is not unbiased.

WHEREFORE, Defendant, MARVIN POWERS, M.D., prays that this Court would decline

Plaintiff's request that the Court take judicial notice of newspaper articles and correspondence.

MARVIN POWERS, M.D., Defendant

BY: _Theresa Powell_

HEYL, ROYSTER, VOELKER & ALLEN
Theresa M. Powell
ARDC #: 6230402

HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, PNC Bank Building
1 North Old State Capitol Plaza
P.O. Box 1687
Springfield, Illinois 62705-1687
Telephone  217.522.8822
Facsimile  217.523.3902

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument, Response to Plaintiff's Judicial Notice, was served upon the attorneys of all parties to the above cause by enclosing the same in an envelope addressed to such attorneys at their business address as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Box in Springfield, Illinois, on the __20th__ day of September, 2010.

Mr. Anthony Gay, #B62251
Tamms Correctional Center
Inmate Mail/Parcels
8500 Supermax Road
Tamms, IL  62988

_Theresa Powell_

Theresa M. Powell

TMP/cs (S3374)
15953170_1.DOCX

2

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
ALEXANDER COUNTY, ILLINOIS

FILED COPY

SEP 2 9 2010

CIRCUIT CLERK *Paul L. Jones* ALEXANDER COUNTY

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Law No.:   2010 MR 32 |
| | ) | |
| MARVIN POWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

NOW COMES the Defendant, MARVIN POWERS, M.D., by HEYL, ROYSTER, VOELKER & ALLEN, and pursuant to Section 10-135 of the Illinois Code of Civil Procedure (735 ILCS 5/1 et. seq.), hereby moves this Court to order the Clerk of the Court to issue a Writ of Habeas Corpus Ad Testificandum. In support of the instant petition, Defendant states as follows:

1.      That the Plaintiff in this action is a resident of the Illinois Department of Corrections who is incarcerated at the Tamms Correctional Center in Tamms, Illinois.

2.      That the Defendant in this case has filed a Motion to Dismiss.

3.      That said motion will be heard before this court on October 20, 2010, at 8:30 a.m.

4.      That the above-listed Defendant requests this Court to order the Clerk of the Court to issue a Writ of Habeas Corpus Ad Testificandum directed to the Warden at the Tamms Correctional Center demanding that the Plaintiff be brought before the Court for the October 20, 2010, hearing.

WHEREFORE, for the above and foregoing reasons, Defendant, MARVIN POWERS, M.D., prays that this Court order the Clerk of the Court to issue a Writ of Habeas Corpus Ad Testificandum.

MARVIN POWERS, M.D., Defendant

BY: _Theresa Powell_

HEYL, ROYSTER, VOELKER & ALLEN
Theresa M. Powell
ARDC #: 6230402

HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, PNC Bank Building
1 North Old State Capitol Plaza
P.O. Box 1687
Springfield, Illinois 62705-1687
Telephone  217.522.8822
Facsimile  217.523.3902

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument, Petition for Writ of Habeas Corpus Ad Testificandum, was served upon the attorneys of all parties to the above cause by enclosing the same in an envelope addressed to such attorneys at their business address as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Box in Springfield, Illinois, on the _28_ day of September, 2010.

Mr. Anthony Gay, #B62251
Tamms Correctional Center
Inmate Mail/Parcels
8500 Supermax Road
Tamms, IL  62988

_Theresa Powell_

Theresa M. Powell

TMP/cs (S3374)
15974330_1.DOCX

2

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
ALEXANDER COUNTY, ILLINOIS

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Law No.:  2010 MR 32 |
| | ) | |
| MARVIN POWERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This cause coming on for hearing on Defendant, Marvin Powers, M.D.'s Petition for Writ

of Habeas Corpus Ad Testificandum, and this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that the Clerk of the Court shall issue a Writ of Habeas Corpus

Ad Testificandum directed to the Warden of the Tamms Correctional Center demanding that the

Plaintiff, ANTHONY GAY, #B62251, be brought before the Circuit Court of the First Judicial

Circuit, Alexander County, Illinois, for a hearing on October 20, 2010, at 8:30 a.m. for a hearing

on the Defendant's Motion to Dismiss.

SO ORDERED:

_____
JUDGE

DATED: _____

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
ALEXANDER COUNTY, ILLINOIS

ANTHONY GAY,                          )
                                      )
        Plaintiff,                    )
                                      )
        vs.                           )     Law No.:     2010 MR 32
                                      )
MARVIN POWERS,                        )
                                      )
        Defendant.                    )

## WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO:    Warden
       Tamms Correctional Center
       8500 Supermax Road
       Tamms, IL 62988

We command that you have and produce the body of Anthony Gay, #B62251, in your

custody at the Tamms Correctional Center, before the Circuit Court of the First Judicial Circuit,

Alexander County, Illinois, at Cairo, Illinois, on October 20, 2010, at 8:30 a.m., in order that said

prisoner may then and there respond to and answer as witness such questions as may be asked

him in the cause of the hearing conducted, and at the termination of said session to return him

forthwith to Tamms Correctional Center.

DATED: _____

                                ENTERED:


                                _____
                                            CLERK OF COURT

In the Circuit Court of the First Judicial
Circuit Alexander County. Illinois

Anthony Gay

Plaintiff

vs.

Marvin powers

Defendant

10-MR-32

# JUDICIAL NOTICE

Now comes plaintiff Anthony Gay requesting this court take Judicial notice of the following:

(1) That on August 3. 2009 The Belleville News-Democrat did a five page report on plaintiff entitled Trapped in Tamms (see Appendix)

(2) That in Westefer v. Snyder 00 cv 162 GPM (memorandum And order And Judgment in a civil case) the court ▬▬ stated in pertinent part: With respect to the matter of the limitations on human contact imposed by confinement At Tamms, it is clear from the record of this case that confinement At Tamms is an experience of very intense isolation for inmates. In fact, even before the supermax prison at Tamms was opened in 1998, the 1993 final report of the Illinois Task Force on Crime And Corrections, which recommended the construction of the supermax prison, ▬▬ cautioned,

Reputable human rights organizations ... have Expressed legitimate and serious concerns about practices in Existing Super-Maximum Security facilities. The Task Force recommends that our ~~[redacted]~~ Super-Max facility be required by statue to conform to certain requirements concerning constitutional and humanitarian safeguards. Since these highly restrictive Environments, if misused, can create conditions tantamount to long-term isolation, the Department of Corrections will have to establish clearly defined rules and regulations to govern the admission and release of inmates from the Super-Max facility and to monitor its operation and administration closely.

Illinois Task Force on Crime and Corrections, Final Report, at 87-88 (1993)

(3) Sound Science and Clinical literature have consistently reported that when human beings are subjected to social isolation and reduced Environmental stimulation, they may deteriorate mentally and in some case develop psychiatric disturbances. Madrid v. Gomez, 889 F. Supp 1146, 1230 (N.D. Cal. 1995). See Also Davenport v. DeRobertis, 844 F. 2d 1310, 1316 (7th Cir) cert. denied, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed. 2d 248 (1988) (noting that there is "plenty of medical and psychological literature concerning the ill effects of segregation of prison inmates.

151 _JW_

Certificate of Service

This certifies I sent the above Judicial notice and
Appendix to the Circuit Clerk of Alexander County and a
copy to Defendant's Consel via mail on ____9-10-10____.

/s/ _____

Anthony Gay B62251
8500 Superman road
Thomas. Il 62988

APPENDIX



bnd.com

Posted on Mon, Aug. 03, 2009

# Trapped in Tamms: Inmates in Illinois' only supermax prison face battle proving mistreatment

BY BETH HUNDSDORFER AND GEORGE PAWLACZYK
News-Democrat

Anthony Gay always fought back. Even in first grade he was quick with his fists, especially when kids mocked his temper or taunted him because he lived with foster parents.

When he came home bloody and bruised, a big mutt he called Diamond comforted him. His aunt, Shirley Gay, who raised her nephew in a tough Rock Island neighborhood, said she always feared that someday Gay's anger would get him into serious trouble.

However, there was nothing in his juvenile record to suggest that Gay would end up where he is today – serving 99 years in solitary confinement at Illinois' supermax prison, the Tamms Correctional Center – after an initial conviction for punching another youth and stealing his hat and a dollar bill. He received probation for that crime, but violated it and landed in prison at age 20 to serve seven years, with parole possible after 3 1/2.

Gay was sent to the maximum security Pontiac Correctional Center, where convictions in the nearby Livingston County Court for assaulting guards added decades to the quick-tempered inmate's sentence, even though these crimes did not involve serious injury and such crimes often are not prosecuted at other prisons, a News-Democrat investigation found.

Gay spends 23 hours a day in a cell at Tamms, in the southern tip of Illinois, where he has been held for the last five years. He first was transferred to Tamms in 1998 and held for about a year before being returned to Pontiac.

To cope with the isolation at Tamms, he has regularly mutilated himself to the point that it required extensive suturing to close his wounds, sometimes without anesthetic, court records state.

The Tamms policy regarding "cutters" often means time on a strap-down bed, a metal framework where an inmate lies spread-eagle, bound by his arms and legs with leather straps.

Gay has been strapped down for periods of up to 32 hours, according to court documents. A prison doctor has testified that mutilators are restrained this way for their own protection so they can't cut themselves until the desire to mutilate passes.

For civil rights lawyers and prisoner advocates, cases like Gay's raise the question: Does a lengthy sentence for a series of minor crimes served in solitary confinement under conditions that drive a person to self-torture amount to cruel and unusual punishment banned by the Constitution's Eighth Amendment?

Civil rights attorneys say a lawsuit raising that question probably would not succeed. They say federal law and U.S. Supreme Court decisions have produced legal hurdles that make it all but impossible to bring many Eighth Amendment arguments. In particular, they cite the 1996 Prisoner Litigation Reform Act passed by Congress in response to a flood of inmate litigation, including frivolous lawsuits that made national headlines.

"The combined effect of the federal legislation and the Supreme Court's pronouncements in the area of prisoner rights has been that courts have essentially left the field of regulating the treatment of prisoners in this country," said attorney Locke Bowman, director of the McArthur Justice Center in Chicago.

"The consequence of this, intended or not, is that prison officials are essentially left to do as they please with respect to solitary confinement, strap-downs and the like," he said. "If it became known that animals were treated in this fashion, there would be widespread public outrage."

Citing the 1996 federal legislation, David Fathi, an attorney at the Washington, D. C., office of Humans Rights Watch, said, "There is one set of rules for everybody else in the country and a different and less favorable set of rules for prisoners."

Fathi's organization criticized the special rules for prisoner lawsuits in a 46-page report released in May. It cited a wide range of unfavorable rules for prisoners, including the difficulty of meeting much shorter deadlines for filing motions and a requirement that inmates first exhaust administrative remedies within the prison, even if they are unfair, complicated or vague.

Michael Randle, newly appointed director of the Illinois Department of Corrections, said the Tamms staff handles inmates in a firm but fair manner.

"The staff at Tamms do a very professional job with a particular population that is the most difficult to deal with in corrections," he said.

U.S. District Chief Judge David R. Herndon in East St. Louis said that the legal rights of inmates who bring lawsuits alleging civil rights violations are well-protected. But Herndon said that without a specific legal complaint,a federal judge does not have the duty to question issues such as whether the effects of long-term solitary confinement are cruel and unusual.

"If there is some specific issue in the complaint, of course, we're going to get into it," he said.

Bowman said attorneys who represent inmates like those at Tamms should address cruel and unusual conditions through indirect or "peripheral" issues, such as alleging that prison officials fail to provide treatment for the seriously mentally ill or arguing that criteria used to transfer inmates to Tamms deny them due process.

Gay's lawyers have filed such a lawsuit. It contends that placing their client on a strap-down bed amounted to a failure by prison officials to provide proper medical treatment, even if Gay caused his own injuries.

The Department of Corrections, in its legal response, said the strap-down bed was proper because it prevented Gay from injuring himself further.

Inmates who file what judges consider frivolous lawsuits can lose their right to a free, court-appointed lawyer and must pay hundreds of dollars in filing fees in small monthly increments, even though they are in solitary confinement with no means of making money.

It can take up to 10 years to resolve a case due to court delays, even when plaintiffs raise immediate issues, such as guards beating prisoners.

Chicago attorney Alan S. Mills filed suit on behalf of 36 Tamms inmates nearly 10 years ago. That lawsuit is scheduled for trial in November before U.S. District Court Judge G. Patrick Murphy in East St. Louis.

In the complaint, Mills contends that his clients' right to due process was violated by a secret and arbitrary system that transferred them from other prisons to Tamms and placed them in solitary confinement, where ordinary privileges like phone calls, access to basic education programs and religious services are banned. The initial complaint also stated that inmates were sent to Tamms in retaliation for filing lawsuits about prison conditions.

The Department of Corrections said in its response that the criteria for transferring an inmate to Tamms is based solely on disciplinary records and alleged gang involvement, according to court records.

'Alice in Wonderland'

Many inmates at Tamms were transferred there from the maximum security Pontiac Correctional Center or the maximum security Menard Correctional Center near Chester, often consider non-criminal harassment of guards. At other prisons, such incidents as throwing urine, feces and food at guards usually would mean a loss of privileges or other punishment, not usually a criminal conviction.

At Pontiac, prison officials don't tolerate such actions. They prosecute offending inmates, who get extra years added to their sentences if they are convicted. The convictions mark these inmates as troublemakers, and many of them become prime candidates for the label "worst of the worst" and a transfer to Tamms.

That's what happened to Gay.

A relatively small man at 5-foot-6 and 150 pounds, Gay claimed corrections officers at Pontiac repeatedly taunted him, knowing he has a hair-trigger temper. Before he was transferred for the second time to Tamms in 2004, he was convicted numerous times for aggravated assault against a guard, which added 92 years to his sentence under a state law that requires this time to be served at the end of the inmate's original sentence.

A review of Gay's record inside prison showed that 18 incidents involved throwing body wastes, pulling back on handcuffs or struggling with guards — none of which led to serious injury. These sentences combined pushed Gay's parole date to 2093.

Livingston County State's Attorney Tom Brown said that after several years of permanent lockdown at Pontiac in the late 1990s, violent crime against prison staff decreased.

"Most of everything has trickled off to stuff that's relatively non-violent, usually throwing some sort of liquid on a guard," he said.

Brown said that the non-violent harassment of guards is still prosecuted because prison staff "have the same right to be safe at work and free of crime as you or I when we go to work."

But a former judge in Livingston County, where the Pontiac prison is located, criticized prosecutors for pressing charges every time Gay essentially resisted authority.

Referring to 10 incidents in a two-month span in which Gay eventually was convicted of "throwing liquids" on guards and received 35 additional years, Circuit Judge Charles H. Frank wrote to a fellow judge: "I would think a $2 piece of plastic draping would have prevented all of these. Apparently, no one out there understands that ... Mr. Gay committed a minor theft. As a practical matter, he is now a lifer."

In a recent telephone interview, Frank said Gay, who always acted as his own attorney, was articulate and once won an acquittal in Frank's court during a trial on an aggravated assault charge.

Frank said he tried to work a deal with prosecutors to wrap up all pending charges in one reduced sentence, but Gay wouldn't cooperate.

"He'd say, 'Nope, I want to try them all,'" the former judge said.

Frank said prison guards who accompanied Gay didn't like the idea that an inmate would so enjoy being in court, even though it was for prosecution of crimes against their own kind.

"It was kind of like Alice in Wonderland around there," Frank said.

Metro-east inmates Michael E. Williams of Hartford and Wade Thomas of East St. Louis faced situations similar to Gay's.

Williams originally was sentenced in 1994 in Madison County Court to two years for theft and was eligible for release after a year, but because of subsequent convictions for crimes committed in prison, including weapons violations at prisons other than Pontiac, he isn't scheduled for parole until 2028. If released then, he will have served 34 years.

Thomas was sentenced in 1997 in St. Clair County Court to 12 years for vehicular hijacking where he was a passenger. He was 18 at the time. He could have been released after six years but because of several convictions for non-injury crimes while in prison, he isn't scheduled for parole until at least 2014, when he will have served 17 years.

### Not a judge's place

Thomas, the filed suit in 2004 in federal court claiming that after mutilating himself, he was strapped down for 12 hours while naked and then left without clothes in a cold cell for days. He acted as his own attorney.

Thomas pressed his case for three years, using the same basic argument that is the basis for Gay's lawsuit — prison indifference to medical needs after self-mutilation and retaliation for filing grievances. He eventually asked the court to drop the case, stating he felt he wouldn't get a fair trial.

The prison's physician, Dr. Marvin Powers, "cleaned his wounds and gave him stitches, but without any anesthetic, causing unnecessary pain," a federal judge's summary stated.

An attorney for the Department of Corrections gave the same response as in similar lawsuits: The prison provided medical care and Thomas was strapped down to prevent him from further harming himself.

Herndon, the federal judge in East St. Louis, said inmates' concerns, even in what might appear to be baseless complaints, are not ignored.

"We get all kinds of complaints from Tamms ... Do I sit around and concern myself with the issues at Tamms? No. Not unless there is an issue before me in a case. It's just not our place to go around and start driving to Tamms and say, 'I'm here to make an inspection to see if you're running your prison right.'"

Herndon said he and other federal judges are seeking ways to shorten the time it takes for a prisoner lawsuit to reach resolution.

In another case, Damir Green was sentenced for a drug charge in 1992 in Cook County to six years with parole possible after three. Like other Tamms inmates, he was convicted of crimes within the prison system that added considerable time to his sentence. 19 extra years in his case. He has been held in continuous solitary confinement since 1999.

In 2000, Green filed suit in federal court in East St. Louis alleging that his rights were violated after he struggled with another guard and was singled out for a digital search of his mouth and then his anal cavity by a guard using the same "dirty glove." Green alleged that the purpose of the search was "humiliation."

A lawyer for the Department of Corrections contended the guard's digital search was proper because Green was suspected of having hidden a weapon in his body.

Green faced a difficult legal hurdle established years ago by the U.S. Supreme Court. It was not enough to prove that the guard searched him with a filthy glove. He must prove that he was seriously injured, and that the guard intended to violate his rights.

After a jury in federal court could not reach a decision, a judge ruled that the case should not go further because Green's physical injuries were minimal.

Green also complained that he was left for 40 minutes in a locked holding cell with his legs shackled and his hands tightly bound behind him. To relieve his discomfort, Green "stepped through" his handcuffs so that they were in front and more comfortable, and this enraged a guard, which led to his harassment, according to Green's lawsuit.

"This message, that they can do anything they want to you because you're not sitting the right way, is just the tip of the iceberg with Tamms," said Nadya Pittendrigh, a member of the Tamms Year 10 Committee, which has long pushed for reform at the supermax.

"It's just a snowflake on the iceberg compared to indefinite isolation with absolutely no legal recourse or due process."

His appeal to the 7th Circuit U.S. Court of Appeals in Chicago was denied two days after it arrived in the mail.

Even when a Tamms inmate wins in the federal court system, collecting real damages is virtually impossible unless a serious, direct physical injury can be shown.

Alex Pearson, a murderer doing 45 years, was told he would be transferred out of Tamms in 2005 after doing eight years in the supermax. Pearson had successfully convinced officials he was no longer involved with the Gangster Disciples, a feared prison gang. This cleared him to get out of Tamms.

However, in the weeks before his transfer, Pearson said a prison guard supervisor told him he would have to become an informant against the gang at other prisons. Pearson said he objected that this would amount to a death sentence and refused. Two days before he was scheduled to ship out of Tamms, he was given a disciplinary ticket for "sexual misconduct," which set his transfer back a year. Pearson said he was urinating and did not notice a female social worker who approached his cell.

Pearson, who acted as his own lawyer, sued on the basis that he was improperly held at Tamms for an extra year.

The Department of Corrections filed court documents stating that no inmate is disciplined except for violations of rules.

A jury in federal court in East St. Louis found in favor of Pearson, who argued that the real reason for the ticket was that the social worker had several times tried to persuade him to "rat out" his former gang colleagues right up until a few days before she made the complaint about him urinating in her presence.

The jury approved a "monetary award" of $1, plus $1.50 attorney's fees. Pearson appealed to the Chicago federal appeals court seeking a larger award. His request was denied.

Tamms is virtually closed to outsiders except for the strictly controlled visiting room. The Department of Corrections rejected the News-Democrat's attempts to get a tour of the

rapped in Tamms: Inmates in Illinois' only supermax prison face battle proving mistreatment
prison.

But complaints about life inside Tamms abound in a mountain of federal lawsuits.

One complaint described "an atmosphere of terror and brutality." Another detailed how staff punishes inmates, including the mentally ill, by shutting off water for toilets and drinking, taking away personal possessions including clothing and restricting the diet to tasteless nutraloaf.

In each of these cases, the Department of Corrections responded that any measures taken were proper and part of the prison's strict discipline policy.

One of the most vivid descriptions came from former Tamms inmate Jon Giles, who sometimes uses the name Mustafa Afrika.

Giles, who spent four years in Tamms before he was paroled last year, said heard what he believes were guards choking Anthony Gay after he had been strapped down. Giles took the unusual step of filing official grievances on behalf of Gay and another inmate he said was ignored for hours after cutting himself, even though he wrote messages for help in blood on his cell wall.

Giles produced copies of the signed and dated grievances, which were rejected by prison officials. He said that from a temporary cell next to the one that contained the strap-down bed that held Gay, he saw guards put on gloves and helmets and then order a nurse to leave the area. He said the guards entered Gay's cell.

"I heard this muffled sound," Giles said, "He got a gasp out and screamed my name, 'Mustafa, they're trying to kill me.'"

Not a judge's place A $1.50 victory An insider's account

© 2007 Belleville News-Democrat and wire service sources. All Rights Reserved. http://www.belleville.com

# Durbin criticizes inmate isolation

## Senate committee looks into Tamms

BY BETH HUNDSBERGER
AND GEORGE PAWLACZYK
News-Democrat

U.S. Sen. Dick Durbin described the number of Tamms inmates being kept in isolation as "heartbreaking" during a hearing Tuesday morning of the Senate's subcommittee on Human Rights and the Law.

Durbin, D-Springfield, serves as chairman of the subcommittee, which is undertaking its first-ever inquiry into a domestic human rights issue. Members heard testimony Tuesday on mental illness in U.S. prisons.

The inquiry was prompted in part by an in-depth news series now in the Belleville News-Democrat series on the state's Tamms super-max prison.

"The number of inmates at Tamms who were facing segregation and isolation

**INSIDE:** Tamms inmate was a juvenile murderer, some say.
**PAGE A2**

**bnd.com**

Comment See the coverage, trapped at Tamms series at bnd.com/tamms

for extraordinarily long periods of time, it's just heartbreaking," Durbin said. "I don't believe the cause of justice is being served in these cases, and I'm glad Gov. (Pat) Quinn is taking a hard look at it. I hope he comes up with a much different approach."

Those suffering from mental illness are more likely to commit crimes and then have more discipline problems in prison, often causing them to be held in more restrictive environments such as those at Tamms, which worsen their mental conditions, Durbin said.

The newspaper series, which ran Aug. 2 and 3, reported that 54 of the prison's roughly 250 inmates were held for more than 10 years, including 39 who have been held since the lockup located near the Illinois-Kentucky border opened in 1998.

*Please see* **TAMMS** */A2*

# Senate panel to examine Tamms prison

## Durbin leads subcommittee looking into mental illness

By Beth Hundsdorfer
and George Pawlaczyk
News-Democrat

The U.S. Senate Subcommittee on Human Rights and the Law will begin its first-ever inquiry into a domestic human rights issue today with a hearing on mental illness in U.S. prisons, prompted in part by a News-Democrat series on the supermax Tamms Correctional Center.

The hearing begins at 9 a.m. Sen. Dick Durbin, D-Springfield, will serve as chairman of the committee. He read the series "Trapped in Tamms," which will play a prominent role in this morning's hearing, according to a Durbin aide.

Among witnesses scheduled to testify are Illinois Department of Corrections Director Michael Randle and 2nd District Appellate Court Judge Kathryn Zenoff.

The newspaper series, which ran Aug. 2 and 3, reported that 54 of the prison's approximately 250 inmates had been held for more than 10

Please see TAMMS, A3

**INSIDE:** Trial begins over treatment of Tamms inmate

**PAGE A3**

**bnd.com**

- Comment
- Read the "Trapped in Tamms" series at bnd.com /tamms

# TAMMS | Many of supermax prison's inmates committed acts tied to mental illness

*Continued from Page 41*

## Senators on the human rights subcommittee

- Chairman Dick Durbin, D-Springfield
- Russell Feingold, D-Wis.
- Benjamin Cardin, D-Md.
- Edward Kaufman, D-Del.
- Arlen Specter, D-Pa.
- Al Franken, D-Minn.
- Tom Coburn, R-Okla.
- Lindsey Graham, R-S.C.
- John Cornyn, R-Texas

years, including 49 who have been held since the lockup opened in 1998. It is located near the Illinois-Kentucky border.

The articles included evidence of mental illness, including self-mutilation and feces-smearing, exhibited over periods of years by inmates.

I also challenged the Department of Corrections' assertion that the prison holds the "worst of the worst."

While about a dozen inmates have been convicted

other inmates, more than 227 — to be a star and present en to the prison, which holds all inmates in solitary confinement 23 hours a day.

And 55 of the 109 inmates who have been convicted since entering the system committed acts that could be unrelated to mental operation or the prison under the guidance of Men-tal Health Division of the Illinois Department of Human Services.

Earlier this month, Amnesty International and Human Rights Watch also cited the "Trapped: In

of killing prison staff and other inmates; more than 227 — to be a star and present en to the prison, which holds all inmates in solitary confinement 23 hours a day.

unless a prisoner is shown prohibit transferring seriously, mentally ill prisoners to a star and present en to the prison, which holds all inmates in solitary confinement 23 hours a day.

cerning the prison system supports measures to provide programs and services to inmates, and seeks the appointment of commissioners to oversee operation of the prison.

der the guidance of Men-tal Health Division of the Illinois Department of Human Services.

The Senate subcommittee previously supported a bill that prohibited crimes against humanity — any widespread and systematic attack directed against a civilian population that in-

urged Gov. Pat Quinn to involve murder, enslave, ment, torture, rape, arbitrary detention, extermination, hostage-taking or ethnic cleansing.

Last week, Randle submitted recommendations regarding Tamms to Quinn, but those recommendations have not been made public.

*Contact reporter Beth Hundsdorfer at bhundsdorfer@bnd.com or 239-2570. Contact reporter George Pawlaczyk at gpawlaczyk@bnd.com or 239-2625.*



Chicago Sports Final
50¢ NEWSSTAND

Chicago Tribune

Thursday, May 18, 2000



# Even the 'worst of the worst' deserve some dignity

**By Jean Maclean Snyder**

Inmates who are on a hunger strike at Illinois' super-maximum security prison have found a remarkable ally: the United Nations.

The UN Committee Against Torture concluded that U.S. super-maximum security prisons are "excessively harsh." Prisoners at Downstate Tamms Correctional Center already know this; the hunger strike is due, in large part, to the barren, isolated conditions imposed on prisoners there.

At super-maximum facilities, inmates spend nearly every waking and sleeping moment in small cells staring through heavy metal mesh doors at the prison wall to glimpse the occasional guard who comes by. Inmates spend all day alone. The only time they feel a person's touch is when the leathered glove of a guard shackles their legs and handcuffs their wrists to move them outside their prison unit. They do not know why they were sent to Tamms or when they will leave. Often their stay is forever.

For some prisoners, the consequences are horrific. At Tamms, Illinois' only super-maximum security prison, some prisoners have mutilated their bodies, swallowed glass and razor blades and tried to hang themselves with torn bedding or clothes. Men hear imagined voices talking to them and see ghosts walk in their cells. They develop paranoid delusions and other psychotic symptoms.

This is why the "excessively harsh regime" of U.S. super-maximum prisons so concerned the torture committee when it reviewed America's first (and long overdue) report. Besides requiring periodic reports, the committee requires the U.S. and 118 other countries to take steps to prevent all torture within their borders. So far, the U.S. has done nothing to discourage super-maximum prisons.

When the committee issued its report on May 15, prisoners at Tamms were in their 16th day of a hunger strike. As many as 170 of Tamms' 270 prisoners had stopped eating to bring attention to their complaints. Though the number of those on strike currently hovers around 10, the protest is extraordinary—no other strike at an Illinois prison has operated on so large a scale.

Gov. George Ryan and other state officials responded to the prisoners' protest with three arguments. First, they said Tamms' harshness is justified because it is reserved for the state's "worst of the worst" prisoners. Finally, they asserted Tamms inmates can work their way out of the facility through good behavior.

As a lawyer who represents many prisoners

**Some prisoners have mutilated their bodies, swallowed glass and tried to hang themselves with torn bedding.**



Illustration by John Overmyer

there, I believe these arguments do not add up.

Conditions at Tamms are not just "spartan," as state officials contend—they are horrendous. Because Americans have looked the other way, "prolonged segregation that previously would have been deemed extraordinary and inconsistent with concepts of dignity, humanity and decency have become a corrections staple" at super-maximum prisons, according to Human Rights Watch.

These serious charges should make Illinois residents want to learn more about Tamms. Yet prison officials have made normal investigation impossible. The press and the public cannot talk to prisoners by phone. Personal visits (Tamms is 370 miles from Chicago) are confined to the official visiting room and require at least two weeks' advance notice. Prisoners are limited to one visit per day. Neither journalists, friends nor family members may bring paper and pen, a camera or a tape recorder into the room.

Second, inmates selected for Tamms are not necessarily the "worst of the worst." Instead, it is suspected that many of its prisoners have been sent there in retaliation for filing lawsuits about prison policies, because serious mental illness as cause them to be disruptive, or simply because wardens at other prisons do not like them.

The selection process is secret from the public and the prisoners. Even the prisoner has no right to know why he was sent there, let alone complain about it. In a state that has sent more innocent men to death row than it has executed, why do we unquestioningly accept the state's assertion that Tamms houses only the worst of the worst?

Third, good behavior is not a way out of Tamms. The prison has no work or educational programs or other group activities; there's almost nothing to be good at.

Our investigation shows that only about four inmates have "graduated" for good behavior since Tamms opened more than two years ago. Over the same period, as many as 20 inmates have been transferred because they succumbed to mental crises that required hospitalization. Another nine were transferred not because they were good, but because they were due to be released back into the community. Doesn't anyone have a question or two for Ryan about that?

The UN Committee Against Torture has called on the U.S. to look harder at its super-maximum prisons because conditions there may violate international standards outlawing torture. Illinois citizens should be asking questions about Tamms, too.

*Jean Maclean Snyder is trial counsel at the MacArthur Justice Center at the University of Chicago. She is the lead attorney of a lawsuit challenging the housing of mentally ill prisoners at Tamms.*

**HUMAN RIGHTS WATCH**

1630 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20009
Tel:     202-612-4321
Fax:    202-612-4333
Email:  hrwdc@hrw.org

**US PROGRAM**

David C. Fathi, *Director*
Alice Farmer, *Aryeh Neier Fellow*
Jamie Fellner, *Senior Counsel*
Abigail Marshak, *Associate*
Alison Parker, *Deputy Director*
Sarah Tofte, *Researcher*

**ADVISORY COMMITTEE**

Catherine Powell, *Chair*
Catherine Albisa
Ann Beeson
Jeffrey Bleich
Stephen Bright
Tanya Coke
David Cole
Mike Farrell
Vanita Gupta
Lulie Haddad
David Keller
Wendy Patten
Bill Quigley
Bruce Rabb
Steven Shapiro
Alexandra Stanton
Dorothy Thomas
Robin Toone

**HUMAN RIGHTS WATCH**

Kenneth Roth, *Executive Director*
Michele Alexander, *Development & Outreach Director*
Carroll Bogert, *Associate Director*
Emma Daly, *Communications Director*
Barbara Guglielmo, *Finance & Administration Director*
Peggy Hicks, *Global Advocacy Director*
Iain Levine, *Program Director*
Andrew Mawson, *Deputy Program Director*
Suzanne Nossel, *Chief Operating Officer*
Dinah PoKempner, *General Counsel*
James Ross, *Legal & Policy Director*
Joe Saunders, *Deputy Program Director*
Jane Olson, *Chair, Board of Directors*



www.hrw.org

May 4, 2009

Governor Pat Quinn
Governor of Illinois
Office of the Governor
207 State House
Springfield, IL 62706

Re: Human Rights Watch supports HB 2633

Dear Governor Quinn:

Human Rights Watch urges you to support HB 2633, which would bring much-needed reform to the operation of Tamms Correctional Center, Illinois' "supermax" prison.

For more than a decade Human Rights Watch has documented the inappropriate use of supermax confinement in the United States. Our reports on this subject include *Cold Storage: Super-Maximum Security Confinement in Indiana*; *Red Onion State Prison: Super-Maximum Security Confinement in Virginia*; and *Out of Sight: Super-Maximum Security Confinement in the United States*. In *Ill-Equipped: U.S. Prisons and Offenders with Mental Illness*, we documented the devastating effects of supermax confinement on the mentally ill.[1]

Perhaps the most important provision of HB 2633 is a ban on placement of prisoners with serious mental illness in supermax confinement. There is an abundant body of evidence that isolated confinement of the kind that exists at Tamms can have catastrophic effects on the seriously mentally ill, leading to exacerbation of their illness and sometimes to self-mutilation and suicide. A number of courts have concluded that supermax confinement of persons with serious mental illness predictably leads to such extreme suffering that it violates the Eighth Amendment to the U.S. Constitution, which prohibits cruel and unusual punishment. Indeed, one federal judge described putting a person with severe mental illness in a supermax facility as "the mental equivalent of putting an asthmatic in a place with little air to breathe." For these reasons many states, including Indiana and Wisconsin, have banned supermax confinement of the seriously mentally ill.

HB 2633 establishes other important limits on placement of prisoners at Tamms. In many states, political pressure to fill an expensive supermax facility has led to the transfer of "nuisance" prisoners who may have large numbers of minor disciplinary infractions but are not dangerous or

---

[1] All of these reports are available on the Human Rights Watch website, www.hrw.org.

In The Circuit Court of The First Judicial
Circuit Alexander County, Illinois

Anthony Gay
              Plaintiff                              10-MR-32

    VS.

Marvin Powers
              Defendant

## MOTION TO STRIKE DEFENDANT'S MOTION TO DISMISS OR IN ALTERNATIVE MOTION TO STRIKE DEFENDANT'S PARAGRAPHS 11 thru 16 AND EXHIBIT

Now comes Plaintiff Anthony Gay filing this motion to strike and states as follows:

(1) The Defendant has filed a motion to dismiss in part based upon the plaintiff filing other lawsuits against other Menard employees.

(2) The plaintiff's other lawsuits including 08-MR-46, 09-CV-925 And 10-CV-336 Are still pending.

(3) The defendant's Exhibit is Irrelevant to to this case.

(4) For the foregoing reasons plaintiff request this court strike the defendant's motion to dismiss or in Alternative strike defendant's paragraphs 11 thru 16 And Exhibit.

                                          /s/ [signature]
                                          Anthony Gay B41251
                                          3500 Supermax road
                                          [    ] IL 62908

Certificate of Service

This certifies I sent the above instrument (motion to strike) to the Nevada County circuit clerk via mail on 9-10-10

/S/ _____

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
ALEXANDER COUNTY, ILLINOIS

Anthony Gay
     Plaintiff

10-MR-32

vs.

Marvin Powers
     Defendant


# MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Now comes Plaintiff Anthony Gay pro-se, And hereby submits his motion in opposition to defendant's motion to dismiss, And states As follows:

(1) The plaintiff's complaint states A cause of Action for Battery And Intentional Infliction of Emotional Distress.

(2) Plaintiff's complaint isit A medical malpractice claim therefore A reviewing physician's report According to 735 ILCS 5/2-622 isit required.

(3) A memorandum of law in support of Plaintiff's position is Attached hereto And incorporated herein.

     For the foregoing reasons, the Defendant's motion to Dismiss should be denied.

                                        /S/ [signature]
                                        Anthony Gay B62651
                                        B500 Superior Road
                                        Tamms, IL 62988

Certificate of Service

This certifies I sent the Above motion in opposition to defendant's motion to dismiss to the Alexander county circuit Clerk and a copy to Defendant's counsel via mail on 9-10-10

/S/

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
ALEXANDER COUNTY, Illinois

Anthony Gay

    Plaintiff

                           10-MR-32

  Vs.

Marvin Powers

    Defendant


MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Now comes plaintiff Anthony Gay pro-se, And in support of
his Memorandum of law states As follows:


A. Stating Cause of Action

When A trial judge is presented with A motion to dismiss
A case for failure to state A cause of action pursuant
to section 2-615 of the code of civil procedure (735 ILCS
5/2-615) he or she must determine whether the complaint
sets forth sufficient facts that, if established could
Entitle plaintiff to relief. Bryson V. News America Publications,
Inc 174 Ill. 2d 77.86, 220 Ill Dec 195, 672 N.E. 2d
1207, 1214 (1996). The judge must accept all well-pleaded
facts in the complaint As true And draw reasonable Inferences
from those facts that Are favorable to the plaintiff.
Bryson, 174 Ill. 2d At 86, 220 Ill. Dec. 195, 672 N.E. 2d
At 1213

# COUNT I BATTERY

Plaintiff alleges the defendant powers committed battery by forcefully sewing plaintiff sutures without anesthetic against plaintiff's will and consent. In addition, causing plaintiff unnecessary pain. moreover plaintiff alleges the the defendant tried to yank strips of towel imbedded through his skin in his thigh. After being unsuccessful he didn't cut the strips of towel but plaintiff's skin to parish and deter plaintiff causing plaintiff unnecessary pain.

Under Illinois law, a person commits the tort of battery if (1) he acts intending to cause a harmful or offensive contact or an imminent apprehension of such a contact, and (2) harmful contact directly or indirectly results. Cohen v. Smith 269 Ill. App 3d 1087, 1090, 207 Ill. Dec 873, 648 N.E. 2d 329, 332 (1995) (citing Restatement (Second) of torts 3 13(1965); See also In re Estate of Allen 365 Ill. App. 3d 378, 302 Ill. Dec 202, 210 (2006) ("common law battery is the unauthorized touching of another"). The defendant is liable not only for contacts which do actual physical harm, but also trivial ones which are merely offensive and insulting". Cohen, 169 Ill. App. 3d at 1091 (citation omitted)

Plaintiff's allegation of battery when viewed in a light

most favorable to plaintiff states a cause of action upon which relief may be granted.

## COUNT II INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In this matter, the factual basis and injuries underlying count 1st and 2nd are similar, but each count is a distinct common law tort.

To state a cause of action for Intentional Infliction of Emotional distress, a plaintiff must show: (1) Extreme and outrageous conduct, (2) intent by the defendant to cause, or reckless disregard of the probability of causing emotional distress, (3) severe or extreme emotional distress suffered by the plaintiff, and (4) an actual proximate causation of emotional distress by the defendant's outrageous conduct. Tobias v. Winkler (1987), 156 Ill. App 3d 886, 896, 109 Ill. Dec 211, 217, 509 N.E. 2d 1050, 1056

Plaintiff's allegation of Intentional infliction of emotional distress when viewed in a light most favorable light to plaintiff states a cause of action upon which relief may be granted.

The Defendant's motion to dismiss under section 2-619 fails

Also. Plaintiff's complaint isn't based on medical malpractice ~~governed~~

governed by the Healing Arts malpractice Act it's based on

battery and Intentional infliction of Emotional distress.

SEE <u>Cohen v. Smith</u> 269 Ill. App. 3d 1087, 1090. 207 Ill. Dec

873, 648 N.E. 2d 329, 332 (1995)


Conclusion

The plaintiff's complaint states a cause of action for Battery

And intentional infliction of Emotional distress.

ISl _____

Anthony Gay B62251

8500 Supermax road

Tamms, Il 62988

Certificate of Service

This Certifies I sent the above memorandum of law in support

of plaintiff's motion in opposition to Defendant's motion to

dismiss to the Alexander county circuit clerk via mail

and a copy to defendant's counsel on  9-10-10

Isl _____

Anthony Gay B62251

8500 Supermax road

Tamms, Il 62988

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
ALEXANDER COUNTY, ILLINOIS

**FILED**

**AUG 2 0 2010**

*Paul L. Jones*
CIRCUIT CLERK ALEXANDER COUNTY

|                     |     |                        |
| ------------------- | --- | ---------------------- |
| ANTHONY GAY,        | )   |                        |
|                     | )   |                        |
| Plaintiff,          | )   |                        |
|                     | )   |                        |
| vs.                 | )   | Law No.:   2010 MR 32  |
|                     | )   |                        |
| MARVIN POWERS,      | )   |                        |
|                     | )   |                        |
| Defendant.          | )   |                        |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

NOW COMES the Defendant, MARVIN POWERS, M.D., by his attorneys, HEYL, ROYSTER,

VOELKER & ALLEN, and for his Motion to Dismiss Plaintiff's Complaint states:

### I.    INTRODUCTION

The Plaintiff has filed a cause of action titled Cause of Action for Battery and Intentional

Emotional Distress.   Plaintiff's complaint fails to set forth sufficient facts to set forth the

necessary elements to prove a cause of action for either battery or intentional infliction of

emotional distress.   Defendant Powers has therefore filed a motion to dismiss Plaintiff's

complaint and now files this Memorandum of Law in support thereof.

### II.    LEGAL ARGUMENTS

**A.    Standard of Review – Dismissals Pursuant to 735 ILCS 5/2-619.1**

Defendant moves to dismiss Plaintiff's Complaint pursuant to 735 ILCS 5/2-615 and 5/2-

619.  The allegations referencing a claim for intentional infliction of emotional distress should be

dismissed pursuant to 5/2-615.  All other counts should be dismissed pursuant to 5/2-619.

735 ILCS 5/2-615(b) is applicable when addressing pleadings with Motion to Dismiss

wherein it is alleged that said pleading substantially insufficient in the law.

5-2/619 is applicable as to the remaining claims as the failure to the Plaintiff to file an affidavit and report in compliance with 5/2-622 references the application of 2-619. (See 735 ILCS 5/2-622(g).)

A Section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses or other matters that act to defeat the claim. *Cohen v. McDonald's Corp.*, 347 Ill. App. 3d 627, 632 (2004). In ruling on a Section 2-615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 267 citing *Kloegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1-8-9 (1992). The question presented to the court on a motion to dismiss for failure to state a cause of action is whether there are sufficient contained in the pleadings to entitle the plaintiff to relief. *Id.*

**B.      Plaintiff's Complaint is Insufficient to State a Claim for Battery against Dr. Powers**

Count I of Plaintiff's complaint should be dismissed for failure to comply with 735 ILCS 5/2-622.

**1.      Plaintiff's Complaint suggests that Defendant Powers acted beyond his scope of medical authority and committed a tort of medical battery.**

The Plaintiff's complaint against Dr. Powers suggests that Defendant Powers acted beyond his scope of authority by treating his self inflicted wounds without anesthetic and in the process therefore committed medical battery.

First, to the extent Plaintiff is alleging an improper act on the part of Defendant Powers, the Plaintiff is required to comply with 735 ILCS 5/2-622. This statue provides as follows:

Section 2-622 of the Illinois Code of Civil Procedure states in pertinent part:

"Healing art malpractice."

2

vi. In any action, whether in tort, contract, or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the Complaint, declaring one of the following:

1. That the affiant has consulted and reviewed the facts of the case with a health professional and the affiant reasonably believes: (i.) is knowledgeable in the particular action; (ii.) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same are of health care or medicine that is at issue in the particular action; (iii.) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. If the affidavit is filed as to a Defendant who is a physician licensed to treat human ailments without the use of drugs, or medicines and without operative surgery, a dentist, a podiatrist, or a psychologist, or a naprapath, the written report must be from a health professional licensed in the same profession, with the same class of license, as the Defendant. For affidavits filed as to all other Defendants, the written report must be from a physician licensed to practice medicine in all its branches. In either event, the affidavit must identify the profession of the reviewing health professional. A copy of the written report, clearly identifying the Plaintiff and the reasons for the reviewing health professional's determi9nation that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit. The report shall include the name and the address of the health professional.

735 ILCS 5/2-622(a)(1).

The Plaintiff did not attach an affidavit and written report to his Complaint and as a result, has failed to comply with 2-622. The failure to file the affidavit and written report is substantive grounds for a dismissal pursuant to 735 ILCS 5/2-619. (See 735 ILCS 5/2-622(g).) As

a result of a failure to comply with this provision of the Illinois Code of Civil Procedure, dismissal is warranted.

Defendant would ask that these counts be dismissed with prejudice as the purpose of 2-622 is to deter frivolous lawsuits and to eliminate them at an early stage. See, <u>DeLuna v. St. Elizabeth's Hosp.</u>, 147 Ill.2d 57 (1992); <u>Cothren v. Thompson</u>, 356 Ill. App. 3d279 (2005).

**2.    Similarly, the plaintiff's reference to a medical battery is also unsupported by the law and should be dismissed.**

Defendant argues that Plaintiff's claims for medical battery should also require the Plaintiff to complete an affidavit pursuant to 5/2-622. Defendant prays that the Court would dismiss the Plaintiff's reference to medical battery for failure to provide an affidavit that the conduct on the part of the Defendant was medically actionable.

Defendant acknowledges that Illinois law does provide for a cause of action for medical battery where there is a total lack of consent to a medical procedure. See, <u>Gaskin v. Goldwasser</u>, 166 Ill. App. 3d 996, 250 N.E.2d 1085 (4th Dist. 1998). A claim may also be allowed in a malpractice case where the treatment is either against the patient's will or substantially at variance with the consent given. <u>Gaskin</u>, at 1012, 1095. In evaluating a cause of action for battery under Illinois law, the scope of the patient's consent is crucial to the ultimate recovery in a battery action. <u>Id</u>.

The Plaintiff makes references to <u>Hernandez v. Schittek</u>, 305 Ill. App. 3d 925, 713 N.E.2d 203 (5th Dist. 1999). There is nothing in this case to indicate that such a claim is anything but a subsection of a medical malpractice case and therefore, so requires that a 2-622 report be completed.

In this case, the Plaintiff alleges that he inflicted a wound upon his leg or legs in January of 2010. The Plaintiff asserts that he gave consent to Defendant Powers to treat his wounds, but then claims that he attempted to withdraw that consent when he put conditions of Defendant Powers' treatment of him.

Plaintiff alleges, pursuant to his own belief, that Defendant Powers should not have treated his wounds with sutures without providing him anesthetic. The Plaintiff's allegation does not establish that the treatment of the patient's wounds was substantially at variance with the consent given. The Plaintiff's complaint alleges that he gave consent to being treated, however, wanted that treatment to be provided to him in a particular fashion.

Plaintiff's allegations are therefore insufficient to establish batter as he admits essentially that he gave consent to being treated and to receiving sutures. His allegations infer only that he wanted a particular medication while being treated. The Plaintiff is not a physician and does not alleges that he has any medical background. In this case, whether or not Defendant Powers was negligent in providing the care and treatment to the Plaintiff in the fashion alleged would be a question that require expert testimony. The Plaintiff's claims as they relate to medical battery should therefore be dismissed.

**C.      Plaintiff's Complaint lacks sufficient facts to support a claim for intentional infliction of emotional distress.**

In order to state a cause of action for intentional infliction of emotional distress, the Plaintiff must allege conduct that is truly extreme and outrageous; that the acting defender either intended that his conduct inflict severe emotional distress or knew that there was a high probability that the conduct would cause severe emotional distress; and the conduct in fact

5

caused severe emotional distress. *See, Reilly v. Wyeth*, 377 Ill. App. 3d 20 (1st Dist. 2007) citing

*Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 268-69 (2003). In addition, complaints alleging intentional

infliction of emotional distress must be specific in detail beyond what is normally considered

permissible in pleading a tort action. *Id.* citing *Welsh v. Commonwealth Edison Co.*, 306 Ill. App.

3d 148, 155 (1999) quoting *McCaskill v. Barr*, 92 Ill. App. 3d 157, 158 (1980).

In determining whether conduct is "extreme and outrageous", the court is to evaluate all

facts and circumstances objectively. See *Reilly* citing *McGrath v. Fahey*, 126 Ill. 2d 70, 90 (1988).

Specifically, "the nature of a defendant's conduct must be 'so extreme as to go beyond

all possible bounds of decency, and to be regarded as intolerable in a civilized community'."

*Reilly* citing *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 21 (1992).

In this case, the Plaintiff alleges that Dr. Powers treated him after he cut on himself and

weaved strips of fabric described as a towel through his own skin. Plaintiff alleges Defendant

Powers attempted to remove this material from his skin and then sutured Mr. Gay's wounds.

Plaintiff complains of his dissatisfaction with the amount of anesthetic provided to him by Dr.

Powers. Plaintiff alleges that he told Dr. Powers he didn't want sutures without anesthetic.

Although Defendant denies this allegation, the Plaintiff has already admitted in the allegations

that he sought care and treatment from Dr. Powers to address his wounds. Plaintiff is not in a

position to provide medical testimony as to whether or not anesthetic is necessary to suture a

wound under the circumstances described by this Plaintiff who is like no other in that he has

repeatedly self-inflicted wounds upon his body and placed foreign objects in the wounds and

then sought medical assistance to address those wounds.

6

Even assuming that Plaintiff's allegations are true for purposes of this motion, the allegations are insufficient to support a cause of action for intentional infliction of emotional distress. Treating Mr. Gay's self-inflicted wounds in the manner described cannot be described as truly extreme or outrageous.

There is no evidence alleged that Defendant Powers believed that he was causing severe emotional distress to this Plaintiff and the Plaintiff alleges in the Complaint itself that he had purposely cut on himself within a short amount of time prior to this. Plaintiff provides no allegation wherein he alleges that he provided himself with an anesthetic before cutting on his legs.

There is nothing alleged to support a claim for intentional infliction of emotional distress.

### 3.    Frivolous Pleadings

Defendant seeks to have Plaintiff's pleading deemed to be a frivolous matter. Pursuant to Illinois Supreme Court Rule 137, litigation which abuses the judicial process through vivacious and harassing actions may carry with them the imposition of sanctions. *See* Supreme Court Rule 137 and *Marvel of Illinois, Inc. v. Marvel Contaminate Control Industries, Inc.*, 318 Ill. App. 3d 856 (2d Dist. 2001).

In this case, Mr. Gay brings his ninth lawsuit against medical personnel relating to his contacts with them following self-inflicted wounds. The Plaintiff creates situations wherein he harms himself, seeks out medical attention from others who are employed to provide services within the Department of Corrections and then complains through lawsuits about how they respond to the situation that he has created intentionally. Plaintiff suffers no consequences when he loses his lawsuits as judgments against him have little effect to one with no assets.

7

Each time Plaintiff is allowed to pursue litigation, he causes an unnecessary expense and use of time on the part of the defense.

WHEREFORE, Defendant, MARVIN POWERS, M.D., prays that this Court would dismiss Plaintiff's Complaint for all of the matters set forth herein.

MARVIN POWERS, M.D., Defendant

BY: *Theresa Powell*

HEYL, ROYSTER, VOELKER & ALLEN
Theresa M. Powell
ARDC #: 6230402

HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, PNC Bank Building
1 North Old State Capitol Plaza
P.O. Box 1687
Springfield, Illinois 62705-1687
Telephone  217.522.8822
Facsimile  217.523.3902

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument, Memorandum of Law in Support of Motion to Dismiss, was served upon the attorneys of all parties to the above cause by enclosing the same in an envelope addressed to such attorneys at their business address as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Box in Springfield, Illinois, on the 17 day of August, 2010.

Mr. Anthony Gay, #B62251
Tamms Correctional Center
Inmate Mail/Parcels
8500 Supermax Road
Tamms, IL 62988

*Theresa Powell*

Theresa M. Powell

TMP/cs (S3374)
15857036_1.DOCX

9

**FILED**

**AUG 2 0 2010**

CIRCUIT CLERK ALEXANDER COUNTY

ANTHONY GAY, )
        )
    Plaintiff, )
        )
    vs. )    Law No.:    2010 MR 32
        )
MARVIN POWERS, )
        )
    Defendant. )

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO 2-615 AND 2-619

NOW COMES the Defendant, MARVIN POWERS, M.D., by HEYL, ROYSTER, VOELKER & ALLEN, and for his Motion to Dismiss Plaintiff's Complaint states:

1.    Plaintiff has filed a cause of action in state court alleging a battery in Count I.

2.    Plaintiff's Complaint fails to set forth sufficient facts to establish a cause of action for medical battery.

3.    First, the Plaintiff Complaint indicates that he did not give consent to Dr. Powers to provide medical care to him.

4.    Plaintiff appears to be alleging that he wanted Dr. Powers to treat the wounds that he inflicted upon himself on January 22, 2010; however, he alleges that he placed certain conditions on the manner in which Dr. Powers provided that care to him.

5.    Plaintiff is not a medical doctor.

6.    Plaintiff is not in a position to tell a physician how to provide medical care and treatment to him and to determine what medication is necessary or not necessary for him.

7.    Plaintiff's Complaint therefore fails to establish the necessary elements for a battery as his own allegations indicate that he gave consent for the care provided, but is simply complaining about the manner in which the care was provided.

8.     With respect to the manner in which the care was provided, the Plaintiff must comply with 735 ILCS 5/2-622 and provide a reviewing physician's health report to establish the appropriate manner in which a physician provides medical care to a patient.

9.     As Plaintiff's Complaint fails to include the necessary reviewing physician's report, Defendant is entitled to a dismissal of this cause of action.

10.     Count II is derivative of Count I in that Plaintiff claims that he suffered intentional emotional distress due to the claims he has made against Dr. Powers in Count I.  Plaintiff's Complaint fails to set forth sufficient allegations to support a cause of action for intentional infliction of emotional distress for the reasons set forth above.

11.     In addition, the Plaintiff's Complaint against Dr. Powers appears to be one in a line of many causes of action filed by Anthony Gay against various individuals who work within the Department of Corrections. This complaint is frivolous and constitutes harassment.

12.     Mr. Gay frequently files lawsuits regarding his dissatisfaction regarding the contacts he has with individuals who work within the Department of Corrections. In addition to this case, Mr. Gay has filed the following other lawsuits in Alexander County: 06-MR-26, 08-MR-28, and 08-MR-46, against medical providers. It is believed that Mr. Gay has several other cases pending against clients who are not those of undersigned counsel.

13.     In addition to these matters, Mr. Gay has also had lawsuits pending in the Southern District of Illinois, as follows: 05-CV-150 complaining about mental health care as well as the placement of Mr. Gay in restraints in conjunction with his cutting on himself. Similarly, Mr. Gay has complained about his care and treatment relating to his self-inflicted wounds on other occasions. See 08-CV-59, 09-CV-925, and 10-CV-336, as well as 09-CV-1404 in the Central

District wherein Mr. Gay's complaint was dismissed for failing to comply with a court order to post bond.

14. Plaintiff continuously files lawsuits regarding the same issues. He creates a scenario wherein he cuts on himself, threatens to cut on himself, and then communicates with others at various correctional facilities and demands a certain response. When he does not receive the response he requested, he files a lawsuit complaining about whatever situation he created.

15. Plaintiff repeatedly harasses individuals who work in the correctional facilities by filing lawsuits such as this one.

16. Plaintiff has a judgment against him in the amount of $2,169.45 from the case of 05-CV-150 in the Southern District of Illinois. See Judgment entered as Ex. 1 and Bill of Costs.

WHEREFORE, Defendant, MARVIN POWERS, M.D., prays that this Court would dismiss Plaintiff's Complaint for the reasons set forth herein and assess costs against Mr. Gay for his intentionally harassing and frivolous pleadings.

MARVIN POWERS, M.D., Defendant

BY: *Theresa Powell*

HEYL, ROYSTER, VOELKER & ALLEN
Theresa M. Powell
ARDC #: 6230402

HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, PNC Bank Building
1 North Old State Capitol Plaza
P.O. Box 1687
Springfield, Illinois 62705-1687
Telephone 217.522.8822
Facsimile 217.523.3902

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument, Motion to Dismiss Plaintiff's Complaint Pursuant to 2-619, was served upon the attorneys of all parties to the above cause by enclosing the same in an envelope addressed to such attorneys at their business address as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in a U.S. Post Office Box in Springfield, Illinois, on the ___ day of August, 2010.

Mr. Anthony Gay, #B62251
Tamms Correctional Center
Inmate Mail/Parcels
8500 Supermax Road
Tamms, IL 62988

_Theresa Powell_
Theresa M. Powell

TMP/cs (S3374)
15856905_1.DOCX

AO 133    (Rev. 9/89) Bill of Costs

# UNITED STATES DISTRICT COURT

|          Southern          | District of |        Illinois        |
| --- | --- | --- |

ANTHONY GAY, Plaintiff

v.

DR. CHANDRA, Defendant

**BILL OF COSTS**

Case Number: 05-150-MJR-DGW

Judgment having been entered in the above entitled action on ___9/17/2009___ against ___Anthony Gay___,
the Clerk is requested to tax the following as costs:
Date

| | |
| --- | --- |
| Fees of the Clerk .................................................................. | $ 0.00 |
| Fees for service of summons and subpoena ............................................. | 150.00 |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | 0.00 |
| Fees and disbursements for printing ................................................... | 0.00 |
| Fees for witnesses (itemize on reverse side) ........................................... | 976.20 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case ............ | 1,043.25 |
| Docket fees under 28 U.S.C. 1923 ..................................................... | 0.00 |
| Costs as shown on Mandate of Court of Appeals ........................................ | 0.00 |
| Compensation of court-appointed experts .............................................. | 0.00 |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 ..... | 0.00 |
| Other costs (please itemize) .......................................................... | 0.00 |
| TOTAL $ | 2,169.45 |

SPECIAL NOTE: Attach to your bill an itemization and documentation for requested costs in all categories.

## DECLARATION

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services
for which fees have been charged were actually and necessarily performed. A copy of this bill was mailed today with postage
prepaid to: _____.

Signature of Attorney: *Theresa Powell*

Name of Attorney:    Theresa M. Powell, Heyl, Royster, Voelker & Allen, Springfield, IL

For: Rakesh Chandra, M.D.                                                    Date:    9/24/2009

Name of Claiming Party

Costs are taxed in the amount of    **$2,169.45**                                    and included in the judgment,

*Nancy J. Rosenstengel*    By: _____    **10/29/09**
Clerk of Court                          Deputy Clerk                                            Date

| WITNESS FEES (computation, cf. 28 U.S.C. 1821 for statutory fees) | | | | | | | |
|---|---|---|---|---|---|---|---|
| | ATTENDANCE | | SUBSISTENCE | | MILEAGE | | Total Cost Each Witness |
| NAME AND RESIDENCE | Days | Total Cost | Days | Total Cost | Miles | Total Cost | |
| Marvin Powers, M.D. Gol Conda, IL 62938 | 1 | 40.00 | | | 280 | 154.00 | $194.00 |
| Katherine Clover Herrin, IL 62948 | 1 | 40.00 | | | 280 | 154.00 | $194.00 |
| Carol George Grand Chain, IL 62941 | 1 | 40.00 | | | 327 | 180.00 | $220.00 |
| Rocky Peppers Creal Springs, IL 62922 | 2 | 80.00 | | | 524 | 288.20 | $368.20 |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| | | | | | | TOTAL | $976.20 |

## NOTICE

**Section 1924, Title 28, U.S. Code (effective September 1, 1948) provides:**
"Sec. 1924. Verification of bill of costs."
   "Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."

**See also Section 1920 of Title 28, which reads in part as follows:**
   "A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

**The Federal Rules of Civil Procedure contain the following provisions:**
Rule 54 (d)
   "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs, but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court."

Rule 6(e)
   "Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, 3 days shall be added to the prescribed period."

Rule 58 (In Part)
   "Entry of the judgment shall not be delayed for the taxing of costs."

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTHONY GAY, B62251, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-150- MJR-DGW |
| | ) | |
| DR. CHANDRA, | ) | |
| | ) | |
| Defendant. | ) | |

STATE OF ILLINOIS　　　　)
　　　　　　　　　　　　　) SS.
COUNTY OF SANGAMON　　)

## **AFFIDAVIT**

I, THERESA M. POWELL, being first duly sworn upon my oath, soundly affirm the following statements:

Pursuant to 28 U.S.C. § 1924, now comes Dr. Chandra, by his attorney, Theresa Powell of Heyl, Royster, Voelker & Allen, and verifies the following information requested as costs in this matter:

1.    Witness fees were paid and were necessary incurred as to Katie Clover, Dr. Powers, Carol George, and Rocky Peppers. This amount was $976.20.

2.    Services charges were actually paid and were necessarily performed in an effort to obtain service on those individuals who were not actively working at the Tamms Correctional Center. This amount was $150 paid to Mark A. Hearvin of Metropolis, Illinois.

3.    Those individuals were Rocky Peppers and Carol George.

4.    Copying charges were actually and necessarily performed and were necessarily incurred in this case for use at trial, both as exhibits and for use in preparation of the witnesses.

5.   Counsel asserts that the information contained herein in correct and that the services performed were necessarily incurred in the case and the fees were charged and have been paid.

6.   Counsel understands § 1923(a) to allow recovery of docket fees which counsel interprets is $20 to cover the cost of obtaining information from PACER. If counsel's interpretation of this section is incorrect, counsel withdraws the request for said fees.

Further Affiant Sayeth Not.

_Theresa Powell_

THERESA M. POWELL

Subscribed and sworn to before me this
28th day of Sept              , 2009.

_E. Elaine Jarman_
Notary Public

> OFFICIAL SEAL
> E. ELAINE JARMAN
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES 11-6-2011

TMP/ej
P7883/15022245_1.DOCX

2

**Dana Rinozzi**

From:          ilsd_nef@ilsd.uscourts.gov
Sent:          Friday, October 30, 2009 3:49 PM
To:            sprecf
Subject:       Activity in Case 3:05-cv-00150-MJR-DGW Gay v. Chandra Costs Taxed

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Southern District of Illinois**

**Notice of Electronic Filing**

The following transaction was entered on 10/30/2009 at 3:48 PM CDT and filed on 10/29/2009

**Case Name:**          Gay v. Chandra
**Case Number:**        3:05-cv-150
**Filer:**
**WARNING: CASE CLOSED on 09/18/2009**
**Document Number:**    180

**Docket Text:**
**Costs Taxed in amount of $2169.45 against Anthony Gay. (lmt)**

**3:05-cv-150 Notice has been electronically mailed to:**

Allen S. Boston (Terminated)     aboston@lewisrice.com

Daniel Massey (Terminated)     dmassey@lewisrice.com, shall@lewisrice.com

David M. Walter     dwalter@heylroyster.com, cskaggs@heylroyster.com, sprecf@heylroyster.com

Matthew A. Lurkins     mlurkins@heylroyster.com, mhoke@heylroyster.com, sprecf@heylroyster.com

Steven D. Hall (Terminated)     shall@lewisrice.com

Theresa M. Powell     tpowell@heylroyster.com, ejarman@heylroyster.com, sprecf@heylroyster.com

**3:05-cv-150 Notice has been delivered by other means to:**

Anthony Gay

B62251
TAMMS CORRECTIONAL CENTER
8500 Supermax Road
Tamms, IL 62988

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1047403380 [Date=10/30/2009] [FileNumber=1264413-0] [ad32cddc7f518f0974586afec4f9dc0b35b9ba4ce62c0f4b42257a1d4227958f3f 3baaab607170d4df869c2010525dba859c9b5422ad6d6169bbbcbef3b1652e]]

**AO 133**    (Rev. 9/89) Bill of Costs

# UNITED STATES DISTRICT COURT

Southern      District of      Illinois

ANTHONY GAY, Plaintiff

V.

DR. CHANDRA, Defendant

## BILL OF COSTS

Case Number: 05-150-MJR-DGW

Judgment having been entered in the above entitled action on   9/17/2009   against   Anthony Gay  ,
the Clerk is requested to tax the following as costs:     **Date**

| | |
|---|---:|
| Fees of the Clerk .............................................................. | $ 0.00 |
| Fees for service of summons and subpoena ................................................ | 150.00 |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | 0.00 |
| Fees and disbursements for printing ...................................................... | 0.00 |
| Fees for witnesses (itemize on reverse side) ............................................... | 976.20 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case ........... | 1,043.25 |
| Docket fees under 28 U.S.C. 1923 ....................................................... | 0.00 |
| Costs as shown on Mandate of Court of Appeals ......................................... | 0.00 |
| Compensation of court-appointed experts ................................................. | 0.00 |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 ..... | 0.00 |
| Other costs (please itemize) ............................................................ | 0.00 |
| TOTAL    $ | 2,169.45 |

SPECIAL NOTE: Attach to your bill an itemization and documentation for requested costs in all categories.

## DECLARATION

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill was mailed today with postage prepaid to: _____ .

Signature of Attorney: *Theresa Powell*

Name of Attorney:   Theresa M. Powell, Heyl, Royster, Voelker & Allen, Springfield, IL

For:   Rakesh Chandra, M.D.           Date:   9/24/2009

Name of Claiming Party

Costs are taxed in the amount of   *$2,169.45*      and included in the judgment.

*Nancy J. Rosenstengel*    By: _____    *10/29/09*

Clerk of Court          Deputy Clerk          Date

| WITNESS FEES (computation, cf. 28 U.S.C. 1821 for statutory fees) | | | | | | | |
|---|---|---|---|---|---|---|---|
| | ATTENDANCE | | SUBSISTENCE | | MILEAGE | | Total Cost Each Witness |
| NAME AND RESIDENCE | Days | Total Cost | Days | Total Cost | Miles | Total Cost | |
| Marvin Powers, M.D. Gol Conda, IL 62938 | 1 | 40.00 | | | 280 | 154.00 | $194.00 |
| Katherine Clover Herrin, IL 62948 | 1 | 40.00 | | | 280 | 154.00 | $194.00 |
| Carol George Grand Chain, IL 62941 | 1 | 40.00 | | | 327 | 180.00 | $220.00 |
| Rocky Peppers Creal Springs, IL 62922 | 2 | 80.00 | | | 524 | 288.20 | $368.20 |
| | | | | | | | $0.00 |
| | | | | | | | $0.00 |
| | | | | | | TOTAL | $976.20 |

### NOTICE

**Section 1924, Title 28, U.S. Code (effective September 1, 1948) provides:**
"Sec. 1924. Verification of bill of costs."
"Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."

**See also Section 1920 of Title 28, which reads in part as follows:**
"A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

**The Federal Rules of Civil Procedure contain the following provisions:**
Rule 54 (d)
"Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs, but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court."

Rule 6(e)
"Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, 3 days shall be added to the prescribed period."

Rule 58 (In Part)
"Entry of the judgment shall not be delayed for the taxing of costs."

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

ANTHONY GAY, B62251,      )
                            )
           Plaintiff,     )
                            )
    v.                  )    No. 05-150- MJR-DGW
                            )
DR. CHANDRA,        )
                            )
          Defendant.   )

STATE OF ILLINOIS     )
                    ) SS.
COUNTY OF SANGAMON  )

**AFFIDAVIT**

    I, THERESA M. POWELL, being first duly sworn upon my oath, soundly affirm the following statements:

    Pursuant to 28 U.S.C. § 1924, now comes Dr. Chandra, by his attorney, Theresa Powell of Heyl, Royster, Voelker & Allen, and verifies the following information requested as costs in this matter:

    1.    Witness fees were paid and were necessary incurred as to Katie Clover, Dr. Powers, Carol George, and Rocky Peppers. This amount was $976.20.

    2.    Services charges were actually paid and were necessarily performed in an effort to obtain service on those individuals who were not actively working at the Tamms Correctional Center. This amount was $150 paid to Mark A. Hearvin of Metropolis, Illinois.

    3.    Those individuals were Rocky Peppers and Carol George.

    4.    Copying charges were actually and necessarily performed and were necessarily incurred in this case for use at trial, both as exhibits and for use in preparation of the witnesses.

5.      Counsel asserts that the information contained herein in correct and that the services performed were necessarily incurred in the case and the fees were charged and have been paid.

6.      Counsel understands § 1923(a) to allow recovery of docket fees which counsel interprets is $20 to cover the cost of obtaining information from PACER.   If counsel's interpretation of this section is incorrect, counsel withdraws the request for said fees.

Further Affiant Sayeth Not.

_Theresa Powell_
THERESA M. POWELL

Subscribed and Sworn to before me this
_26th_ day of _Sept_____, 2009.

_E. Elaine Jarman_
Notary Public

> **OFFICIAL SEAL**
> **E. ELAINE JARMAN**
> **NOTARY PUBLIC - STATE OF ILLINOIS**
> **MY COMMISSION EXPIRES 11-8-2011**

TMP/ej
P7883/15022245_1.DOCX

2

**Dana Rinozzi**

| | |
|---|---|
| **From:** | ilsd_nef@ilsd.uscourts.gov |
| **Sent:** | Friday, October 30, 2009 3:49 PM |
| **To:** | sprecf |
| **Subject:** | Activity in Case 3:05-cv-00150-MJR-DGW Gay v. Chandra Costs Taxed |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

## Southern District of Illinois

## Notice of Electronic Filing

The following transaction was entered on 10/30/2009 at 3:48 PM CDT and filed on 10/29/2009
**Case Name:**      Gay v. Chandra
**Case Number:**      3:05-cv-150
**Filer:**
**WARNING: CASE CLOSED on 09/18/2009**
**Document Number:**      180

**Docket Text:**
**Costs Taxed in amount of $2169.45 against Anthony Gay. (lmt)**


**3:05-cv-150 Notice has been electronically mailed to:**

Allen S. Boston (Terminated)      aboston@lewisrice.com

Daniel Massey (Terminated)      dmassey@lewisrice.com, shall@lewisrice.com

David M. Walter      dwalter@heylroyster.com, cskaggs@heylroyster.com, sprecf@heylroyster.com

Matthew A. Lurkins      mlurkins@heylroyster.com, mhoke@heylroyster.com, sprecf@heylroyster.com

Steven D. Hall (Terminated)      shall@lewisrice.com

Theresa M. Powell      tpowell@heylroyster.com, ejarman@heylroyster.com, sprecf@heylroyster.com

**3:05-cv-150 Notice has been delivered by other means to:**

Anthony Gay

B62251
TAMMS CORRECTIONAL CENTER
8500 Supermax Road
Tamms, IL 62988

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1047403380 [Date=10/30/2009] [FileNumber=1264413-0] [ad32cddc7f518f0974586afec4f9dc0b35b9ba4ce62c0f4b42257a1d4227958f3f3baaab607170d4df869c2010525dba859c9b5422ad6d6169bbbcbef3b1652e]]

# RECORD SHEET

Case No. 2010 MR 32

Nature of Case_____

Gay, Anthony B 62251
VS
Powers, Marvin

Attorneys:

Form AO 69-32 Byers Printing Company, Springfield, IL

| DATE | JUDGE AND REPORTER | | COSTS |
|------|--------------------|--|-------|
| 4 13 2010 | PT | Motion for Leave to File In Forma Pauperis, application to Sue or Defend as a Poor Person Cause of Action for Battery and Intentional Emotional Distress | |
| 4 14 10 11 | | Motion for leave to file as poor person granted Cause to issue Clerk to mail a copy of this entry to Plaintiff | |

In the Circuit Court of Alexander County

Anthony Gay
plaintiff

No. 2010 MR 32

vs.

Marvin Powers
Defendant

Motion For leave to File In Formia Pauperis
Now Comes Anthony Gay plaintiff And moves this
Court for permission to file this Action Informia
pauperis without prepayment of fees And costs,
As the attached Affidavit Indicates he is unable
to pay such cost or give security.

This motion is based upon the Affidavit And
complaint submitted herein.

\s\ _____
Anthony Gay B62251
8600 supermax road
Tamms. Il 62988

Certificate of Service
_____
This certifies I sent the Above Instrument to the
Alexander county circuit Clerk via mail on 3-19-10

**FILED**

APR 13 2010

*Paul L. Jones*
CIRCUIT CLERK ALEXANDER COUNTY

\s\ _____

IN THE CIRCUIT COURT OF ALEXANDER COUNTY

Anthony Gay
    Plaintiff

vs.

Marvin Powers
    Defendant

**FILED**

APR 13 2010

*Paul L Jones*
CIRCUIT CLERK ALEXANDER COUNTY

No. 2010 MR 32

## CAUSE OF ACTION FOR BATTERY AND INTENTIONAL EMOTIONAL DISTRESS

Now comes plaintiff Anthony Gay filing this cause of action on the following grounds:

1. I Anthony Gay am the plaintiff in this cause of action and was at all times an inmate in Tamms Correctional Center.

2. The Defendant Marvin Powers is a Medical Doctor in Tamms Correctional Center. And was at all times relevant a medical doctor in Tamms Correctional Center.

## COUNT I BATTERY

3. On January 22, 2010, the plaintiff cut a deep gash in his right upper thigh. He also weaved strips of towel through his skin in many places on his inner thigh.

4. Subsequently the plaintiff was seen by Defendant Powers (the same day).

5. The Defendant Powers tried to yank the strips out to no avail.

6. After his unsuccess he stated, "I'm tired of you doing this," (In relations to the plaintiff weaving strips of towel through his skin). The defendant Powers, then maliciously and sadistically with the intent to cause intentional physical pain and intentional emotional distress didn't cut the strips of towel. He cut plaintiff's

skin, causing plaintiff physical pain and emotional distress.

7. Subsequently, the defendant powers prepares to suture the plaintiff's cut on his thigh. The plaintiff informed defendant powers, he didn't want him to suture plaintiff without anesthetic. The defendant powers states, "I do it the way I wanna do it." He then sutures plaintiff without anesthetic causing plaintiff unnecessary and unwanted pain and intentional emotional distress.

## COUNT II Intentional Emotional Distress

8. Plaintiff re-alleges paragraphs 1# thru 7#

## RELIEF REQUESTED

9. That plaintiff be awarded compensatory and punitive damages.

|S| _____
Anthony Gray B62251
8500 supermax road
Tamms, Il 62988

State of Illinois

Affidavit

I, Anthony Gray, being duly sworn under oath state that I am the plaintiff in this cause of action and state the content thereof are true and correct to the best of my knowledge.

|S| _____

Certificate of Service

This certifies plaintiff sent the attached instrument
to the clerk of court in Alexander County and
a copy for the defendant via mail on 3-19-10

/s/

P

Byers Printing Company, Springfield, IL

IN THE CIRCUIT COURT OF THE _____ *1st* _____ JUDICIAL CIRCUIT

_____ *Alexander* _____ COUNTY, ILLINOIS

v.

NO. *2010 MR 32*

**SUMMONS**

To the defendant:

      YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance,

in the office of the clerk of this court _____

(Insert name of building, room number, address, including city)

Illinois, within 30 days after service of this summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

To the officer:

      This summons must be returned by the officer or other persons to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed. This summons may not be served later than 30 days after its date.

(Seal of court)

WITNESS _6-29_ _____, 20 _10_.

_____
Clerk of court

_____
Associate Circuit Clerk-Deputy

Name _____
Attorney for _____
Address _____
City _____
Telephone

Date of service: _____, 20 ____.
(To be inserted by officer on copy left with defendant or other person)